IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-07-402 |
| | * | |
| GARY BERNARD WILLIAMS | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM**

Gary Bernard Williams is a federal prisoner currently serving a life sentence for drug trafficking offenses. Now pending is Williams's motion for a reduced sentence pursuant to Section 404 of the First Step Act. (ECF 132). Williams asks that the court reduce his sentence to 300 months, or 25 years. The government opposes the motion, (ECF 135), and Williams has replied, (ECF 136).[1] No hearing is necessary to resolve the motion. For the reasons that follow, the motion will be granted in part; Williams's sentence will be reduced to 360 months imprisonment, followed by five years of supervised release.

**BACKGROUND**

On September 4, 2007, Williams was charged by indictment with two counts of distribution of cocaine hydrochloride (counts one and two) and one count of distribution of crack cocaine (count three). Williams was tried by a jury and, on December 19, 2007, convicted of all three counts. As to count three, the jury found that the distribution offense involved fifty grams or more of crack cocaine. At the time of Williams's conviction, this finding triggered a statutory penalty range of ten years to life pursuant to 21 U.S.C. § 841(b)(1)(A)(iii). On February 15, 2008, the United States Probation office completed a presentence report, which concluded that the counts of conviction yielded an offense level of 30 and that Williams's criminal history category was VI. Based on these findings, the

---

[1] Williams also has filed multiple notices of supplemental authority. (ECFs 138, 139, 140, 141, 142).

1

USPO advised that Williams's guideline range was a total of 168 to 210 months. (ECF 122 at 3). In a plea offer prior to trial, the government had offered to cap its sentencing recommendation to a sentence within that range. (ECF 93-1 ¶ 5). On April 15, 2008, the government submitted a sentencing memorandum that indicated it intended to seek life imprisonment without parole, alleging that in 2006, Williams shot and killed Robin Welshons, a cooperating witness in Williams's case, pursuant to U.S.S.G. § 2A1.1 (base offense level of 43 may be applied as a cross reference in cases involving a premeditated killing) and § 2D1.1(d)(1) (for an offense of conviction under 21 U.S.C. § 841(b)(1)(A), "if a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 111 had such killing taken place within the territorial . . . jurisdiction of the United States, apply § 2A.1.1"). (ECF 122 at 3).

      On May 9 and May 16, 2008, an evidentiary hearing was held regarding the government's request before Judge William D. Quarles, Williams's sentencing judge. (ECFs 70, 71).[2] During the hearing, the government presented testimony by two law enforcement officials involved in Mr. Williams's case and recorded phone calls between Williams and Welshons. In the recorded conversations, Williams questioned whether Welshons was cooperating with the government. (ECF 70 at 35–36). The officer supervising Welshons testified that Welshons told him she had observed Mr. Williams surveilling her while she was at work, (ECF 70 at 7). On cross-examination, he acknowledged that Williams was not the only individual about whom Welshons was an informant, (*id.* at 9–13). In the week prior to the sentencing hearing, the main investigator of Welshon's homicide interviewed Williams's father, Gary Williams, Sr. ("Williams Sr."), who told the investigator that Williams had come to his home the night before the murder to ask Williams Sr. for a .357 revolver Williams Sr. had been keeping for him in order to "take care" of Welshons. (ECF 70 at 25). Williams Sr. further related that the following morning, Williams came to Williams Sr.'s workplace, and told

---

[2] Judge Quarles has since retired.

him to get rid of the .357 bullets and holster that remained at Williams Sr.'s residence, which directions Williams Sr. said he followed. (*Id.* at 26). A few days prior to the May 15, 2008 hearing, .357 caliber bullets were recovered from the location where Williams Sr. had told law enforcement that he had discarded them. (ECF 71 at 65). The homicide investigator testified that the spent bullets at the site of Welshon's murder had characteristics of either .357, .38, or 9 mm caliber bullets. (ECF 70 at 27). A defense investigator also interviewed Williams Sr. During that interview, Williams Sr. indicated that he had spoken to the government regarding his son after being arrested on what he was told were charges for being a felon in possession of a handgun. He further told the investigator that he was told that if he cooperated, those charges would "go away." (ECF 71 at 82–83).

Defense counsel made repeated objections to the fact that the government had not disclosed any of its evidence in support of its request prior to the hearing. (*See* ECF 71 at 61–66, 67-68, 87, 95). The late disclosures were the reason for the week-long delay between the two days of the hearing. The court acceded to a defense request for a week to prepare and respond to the newly disclosed evidence presented during the first day of the trial. On the second day of the hearing, the government revealed additional previously undisclosed evidence, including the evidence regarding the recovery of .357 bullets at the site where Williams Sr. told law enforcement he had discarded them. Judge Quarles acknowledged that defense counsel was "in a difficult position," but "didn't want to go into an endless loop of new evidence and additional time for preparing." (*Id.* at 63). Overruling defense counsel's objections and relying heavily on the hearsay testimony of the government's law enforcement witnesses, Judge Quarles found by a preponderance of the evidence that Williams was responsible for the murder of Welshons. *See United States v. Williams*, No. WDQ-07-402, 2008 WL 2091152, at *3 (D. Md. May 16, 2008). This finding increased Williams's guideline sentence to one of life imprisonment on count three. Williams was sentenced to 120 months as to each of counts one

and two (to run concurrently) and to life imprisonment as to count three, to run concurrently to counts one and two. (ECF 55, Judgment).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-291, 132 Stat. 5194 (2018). The First Step Act provides, *inter alia*, for broader application of the Fair Sentencing Act of 2010, a law aimed at reducing sentencing disparities between crack and powder cocaine offenses. *See United States v. Wirsing*, 943 F.3d 175, 178 (4th Cir. 2019) (citing Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010)). Pursuant to Section 404 of the First Step Act, a sentencing court "may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *Id.* § 404(b), 132 Stat. at 5222 (citation omitted). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222 (citation omitted).

Williams contends that because the Fair Sentencing Act reduced the mandatory minimum and statutory maximum penalties that apply to him on Count 3 for the distribution of fifty grams or more of crack cocaine from ten years to life to five to forty years, *see* 21 U.S.C. § 841(b)(1)(B)(iii), the court may impose a reduced sentence on that count. Williams argues that his sentence is disproportionately lengthy compared to the current statutory maximum for his offenses and compared to the average sentences imposed for most murders, and that the court should exercise its discretion to reduce his sentence to 300 months in light of his excellent BOP record. The government does not contest that Williams is eligible for a sentence reduction pursuant to the First Step Act, but opposes relief on the basis that Williams's guideline sentence would today remain a life sentence and that a lesser sentence would not sufficiently reflect Williams's role in the murder of Robin Welshons.

**DISCUSSION**

As the parties agree that Williams is eligible for a consideration on the merits for a reduction in sentence, the court has the "discretion to impose a reduced sentence as if the Fair Sentencing Act were in effect at the time the covered offense was committed." *United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021). In doing so, "the court must engage in a brief analysis that involves the recalculation of [Williams's] Sentencing Guidelines in light of intervening case law, . . . and a brief reconsideration of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* (citing *United States v. Chambers*, 956 F.3d 667, 672, 674 (4th Cir. 2020); *United States v. Collington*, 995 F.3d 347, 355–56 (4th Cir. 2021).

The government contends that Williams's guideline range would today remain life imprisonment based on Judge Quarles's findings regarding Williams's involvement in Welshon's murder. The government is correct that the offense level for an individual determined to have committed a homicide in connection with a drug trafficking offense has not changed since the imposition of Williams's sentence. With an offense level of 43, the Guidelines would still initially advise a life sentence on count three. *See* U.S.S.G. § 2A1.1. But, of course, the Guidelines also advise that where a statutorily authorized maximum sentence on a particular count is less than the minimum of the applicable guideline range, the sentence imposed on that count shall not be greater than the statutorily authorized maximum sentence. *See id.* § 5G1.2, Application Note 3(B). The Guidelines therefore would now advise a forty-year sentence on count three. *See also Collington*, 995 F.3d at 358 (holding the district court erred in refusing to reduce defendant's sentence pursuant to a Section 404 motion to, at most, the retroactively applicable statutory maximum sentence).

The court next revisits the 18 U.S.C. § 3553(a) factors. The court first considers the "nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), including Williams's post-sentencing conduct, which "provides the most up-to-date-

5

picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). Williams's offense involved a significant quantity of crack cocaine and he was found at sentencing to have been responsible for the murder of a cooperating witness in his case. This is gravely serious conduct and warranted a significant sentence. Without minimizing the harm Williams has caused, the court also must consider Williams's remarkable post-sentencing conduct. In over thirteen years in the BOP, Williams has maintained a spotless disciplinary record. (ECF 132-1). His most recent progress report indicates that his "interaction with staff and inmates has been appropriate and no management concerns are noted at this time." (ECF 132-2 at 2). He earned his GED in 2013, has taken twenty-nine courses, and has received a lift truck operator certification. (*Id.* at 1–2; ECF 132-5). Williams "has earned average to above average work evaluations while incarcerated." (ECF 132-2 at 1). In addition to his consistent engagement in educational programs and employment, Williams volunteered as a suicide watch companion while at USP Lewisburg for six years. (ECF 132-4 at 2). Participation in this program "requires demonstration of superior institutional adjustment determined through a screening process by both unit team and custody staff. Following this initial screening, applicants are interviewed by the Chief Psychologist and the final selections are based upon the demonstration of maturity, responsibility and commitment to the well-being of fellow inmates." (ECF 132-6 at 1). Williams has maintained this extraordinary progress under at times very difficult personal circumstances, including the 2018 death of his eighteen-year-old son. (ECF 132-4 at 2).

With this history in mind, the court considers the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence and to protect the public from further crimes by Williams. 18 U.S.C. § 3553(a)(2)(A)–(C). The government argues that any sentence less than life imprisonment would not adequately reflect the seriousness of Williams's offense or provide adequate deterrence and would not sufficiently protect the public. This argument does not adequately address

the above-discussed progress Williams has made during his incarceration, or the fact that, though he was certainly fully responsible for his actions, he was a young adult (twenty-seven) when he committed these crimes. Though a lengthy prison sentence remains appropriate in this case, the court finds that a life sentence is greater than necessary for Williams. The average sentence imposed over the past five years for first-degree murder is 302 months. *See* United States Sentencing Commission, Interactive Data Analyzer, Average and Median Sentence Length, 2016–2020, Guideline § 2A1.1, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last accessed July 12, 2021). Courts in this district routinely impose sentences within the thirty-year range on defendants involved in drug-related killings. *See United States v. Floyd*, CCB-16-597, ECF 691 (sentencing defendant who was convicted of a racketeering conspiracy that involved a murder to 360 months incarceration); *United States v. Hunter*, JKB-16-363, ECF 288, 706 (imposing sentence of 321 months where defendant admitted to distributing a mandatory-minimum quantity of drugs and to shooting and killing an individual); *United States v. Weaver*, RDB-19-144, ECF 117, 163 (imposing sentence of 360 months where defendant admitted to an execution style murder of a member of a rival drug trafficking organization). And courts in this district have, under Section 404 of the First Step Act, reduced the life sentences of defendants who, like Williams, were sentenced pursuant to the U.S.S.G. § 2A1.1 cross-reference for murder. *See, e.g.*, *United States v. Cheese*, No. CR ELH-98-259, 2020 WL 3618987, at *10 (D. Md. July 2, 2020) (reducing sentence to 336 months); *Brown v. United States*, No. CR ELH-00-0100, 2020 WL 1248950, at *10 (D. Md. Mar. 16, 2020) (reducing sentence to 480 months); *United States v. Hill*, No. CR JKB-96-00399, 2020 WL 2089379, at *2 (D. Md. Apr. 30, 2020) (reducing sentence to 330 months). In light of these cases and Williams's exemplary and promising post-sentencing conduct, the court finds that a reduction in Williams's sentence to 360 months adequately reflects the seriousness of his offense, affords adequate deterrence, is sufficient to protect the public and provide just punishment for the offense, and comports with current sentencing practices.

## CONCLUSION

For the foregoing reasons, Williams's motion for a reduced sentence (ECF 132) will be granted and his sentence on count three will be reduced to 360 months imprisonment. The court will impose a five-year period of supervised release on count three, to be served concurrently with counts one and two, with the mandatory and standard conditions.[3] A separate Order follows.

| | |
|---|---|
|   8/23/2021   | /S/ |
| Date | Catherine C. Blake |
| | United States District Judge |

---

[3] *See* Standing Order 2020-13 (Jun. 10, 2020).